UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOBY LAMB, II,
    Plaintiff,

vs.

CORRECTIONAL OFFICER,
JUSTIN REECE, et al.,
    Defendants.

Case No. 1:20-cv-00265
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate in the custody of the Ohio Department of Rehabilitation and Correction (ODRC), brings this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges violations of his constitutional rights by ODRC employees Justin Reece, Justin Crowder, Shane Carey, Brittany Maxwell, Sydney Hensley, and Brant Kendrick. (Doc. 1). Plaintiff brings two claims for relief: (1) defendants used excessive force against him while he was handcuffed, and (2) defendant Kendrick is liable under a theory of supervisory liability and deliberate indifference to the conduct of the employees under his charge.[1] (Doc. 1 at PAGEID 7). This matter is before the Court on defendants' first motion for summary judgment concerning exhaustion (Doc. 14), plaintiff's response in opposition (Doc. 19) and supplement to his response (Doc. 23), and defendants' reply memorandum in support of their motion (Doc. 24).

The incident giving rise to the complaint occurred on April 6, 2018. Plaintiff alleges that on that date, he was involved in an altercation with correctional official Quigley while in his cell at the Warren Correctional Institution (WCI). (Doc. 1, ¶ 1). Plaintiff alleges that after the altercation, defendants Kendrick, Reece, Crowder, Carey, Maxwell and Hensley retaliated

---

[1] Plaintiff also brought state law claims in the complaint, which he subsequently withdrew. (Doc. 9).

against plaintiff by beating him and using pepper spray against him while he was handcuffed and helpless and outside the view of the surveillance cameras. (*Id.*, ¶¶ 11-16). One of the defendants also used a racial insult against plaintiff, saying "I got your black ass." (*Id.*, ¶ 17). Each defendant breached their duty to intervene and protect plaintiff. (*Id.*, ¶ 22). Plaintiff alleges he suffered serious injuries as a result of defendants' use of excessive and unreasonable force. (*Id.*, ¶¶ 21, 25, 26, 27, 29, 31). Plaintiff alleges that defendants conspired with each other to provide false, misleading, and incomplete official reports of the incident to cover up their misconduct. (*Id.*, ¶ 24).

Defendants move for summary judgment on the ground plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing his action in this Court. (Doc. 14).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615;

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

**III. Exhaustion of Administrative Remedies**

    **A. Legal Standard**

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available

3

are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Defendants are entitled to summary judgment only if they "establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id*. at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90.

"Because the [d]efendants bear the burden of proof on exhaustion, they bear an initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion and that no reasonable jury would be free to

4

disbelieve it." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles*, 678 F.3d at 455-56) (internal quotations omitted)). The Court must also consider "whether an inmate has made affirmative efforts to comply with the administrative procedures and whether those efforts to exhaust were sufficient under the circumstances." *Id*. (quoting *Risher*, 639 F.3d at 240) (in turn quoting *Napier v. Laurel County*, 636 F.3d 218, 223-24 (6th Cir. 2011)) (internal quotations omitted).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member involved within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5210-9-31(J)(1)[2]. Staff shall respond within seven days of receipt of the informal complaint. *Id*. Second, if the inmate is dissatisfied with the response to his informal complaint, or the informal complaint process has been waived, he may file a notification of grievance with the inspector of institutional services. Ohio Admin. Code § 5120-9-31(J)(2). The inmate must file a grievance within 14 days from the date of the informal complaint response or waiver of the informal complaint step. *Id*. The inspector of institutional services shall provide a written response within 14 days of receipt of the notification of grievance, and the time to respond may be extended by 14 days with notice to the inmate. *Id*. If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process by filing an appeal with the office of the chief inspector within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(J)(3). The chief inspector shall

---

[2] Ohio Admin. Code § 5210-9-31 was modified effective January 9, 2020. The provisions that are now found at Ohio Admin. Code § 5120-9-31(J)(1)-(3) were previously codified at Ohio Admin. Code § 5120-9-31(K)(1)-(3). The administrative grievance provisions that are relevant to this case were not substantively modified.

5

provide a written response within 30 days of receipt of the appeal. *Id*. The chief inspector may waive the filing or response time limits for good cause. *Id*.

### B. The parties' evidence

Defendants have presented the affidavit of Chief Inspector Antonio Lee in support of their motion for summary judgment. (Doc. 14-2). Chief Inspector Lee avers the following:

> I have reviewed the entire grievance file of inmate Toby Lamb, II, A734-060. On April 9, 2018, Inmate Lamb submitted an informal complaint resolution (ICR) concerning the "WCI shift supervisor lied on 4/6/18 stating that I refused my 'use of force' statement" regarding the reported use of force occurring on April 6, 2018. The WCI Institutional Inspector, Cynthia Hill, and then her replacement, Casey Barr responded to Inmate Lamb's grievance via the JPay system on April 17, 2018. Inmate Lamb did not file any other informal complaints, grievances or appeals concerning this April 6, 2018 reported use of force.

(*Id*. at ¶ 13). Plaintiff's April 9, 2018 informal complaint referenced above states:

> WCI shift supervisor lied on 4/16/18 stating that I refused my "use of force" statement. The nurse treating me at that time could attest to that. My hands were cuffed behind my back and I couldn't even see after officers kicked me in the eye and maced me on the way to the infirmary.

(*Id*.). The back of the form states, "This communication was created by [Institutional Inspector] Cynthia Hill, . . . on behalf of the inmate." (*Id*. at PAGEID 61; *see* Doc. 14-1, ¶ 13). Hill's replacement, Institutional Inspector Barr, responded to the ICR on April 17, 2018, by informing plaintiff, "You will be able to give your statement during the use of force investigation. I will make sure that your statement is obtained." (*Id*.). Chief Inspector Lee also avers that upon arrival to an ODRC reception institution, all inmates are given written and oral instructions on how to use the inmate grievance procedure. (Doc. 14-1, ¶ 12). Defendants submit a true and accurate copy of the orientation checklists and offender reception packet signed by plaintiff. (Doc. 14-3).

6

Plaintiff submits his own affidavit stating that he did not receive Mr. Barr's response to the April 9, 2018 ICR until March 2020. (Doc. 19-2, Pl. Aff., ¶ 12). Plaintiff states that from April 6, 2018 until March 2020 he did not have access to the JPay Securus System. (*Id.*, ¶ 9). Plaintiff was transferred from WCI to the Lebanon Correctional Institution (LeCI) on April 7, 2018 (*Id.*, ¶ 11), the date after the alleged incident, and was housed in restrictive housing, or segregation, as a "level 5" security prisoner. (*Id.*, ¶¶ 7-8). He further states that he filed a second ICR "in approx. 4/2018" explaining that "force was [used] against me for no reason. . . ." (*Id.*, ¶ 4). Plaintiff avers he never received a response to this ICR. Plaintiff also states that after he had been at LeCI "for some time and received no response from ODRC" he requested "grievance/complaint forms from multiple correctional staff members" (*Id.*, ¶¶ 15-16) and was told there were no forms available. (*Id.*, ¶ 18). Plaintiff states he also asked for grievance/complaint forms from Institutional Inspector Lora Austin, who allegedly told him "it would be a waste of time because the time had already passed for [him] to submit an appeal, and because the prison did not have any forms." (*Id.*, ¶ 17). Plaintiff alleges he was without access to information on how to proceed with a grievance without having access to forms or to the JPay system. (*Id.*, ¶ 20). Plaintiff states that in November or December of 2018, he sent an appeal letter to the ODRC Chief Inspector in Columbus, Ohio, which addressed the attack against him, but he never received any response to his letter. (*Id.*, ¶¶ 21-23).[3]

---

[3] Following the submission of his affidavit, plaintiff filed a supplemental response alleging he "was able to locate a copy of an Informal Complaint Resolution he submitted to Southern Ohio Correctional Facility Inspector Mahlman on November 29, 2018. (Doc. 23 at PAGEID 105, Ex. 3). Plaintiff had previously been transferred to the Southern Ohio Correctional Facility (SOCF) on November 19, 2018. The ICR form states, "I was beat in handcuffs at WCI and had most of my property destroyed. I wrote ICR's and never received a response. Would you let me know what's going on? Thank you." (*Id.*). Plaintiff argues this is further evidence that he submitted multiple ICRs, never received a response to his previous ICRs, and was denied access to the ODRC grievance system. (*Id.*).
    Inspector Mahlman attests she never received this ICR. Inspector Mahlman states, "I date stamp and write on every ICR I receive. This ICR lacks any date stamp, or my written response, and is not properly logged in

7

In reply, defendants deny they ever received an ICR or notification of grievance (NOG) form from plaintiff after his April 9, 2018 ICR. (Doc. 24-1, Affidavit of Correctional Grievance Officer 2 Isaac Bullock, ¶ 8). Officer Bullock avers that all inmates have access to the grievance process regardless of their security level or housing location, and ICR and NOG forms are available at request in all restrictive housing blocks. (*Id.*, ¶¶ 8-9). He further states that plaintiff was instructed on the inmate grievance procedure when he was initially incarcerated on April 6, 2017 and transferred to WCI on May 4, 2017, and every prison library contains a copy of the Ohio Administrative Rules governing inmate grievances and the inmate handbook. (*Id.*, ¶ 10; Doc. 14-3).

### C. Resolution

There is no dispute that plaintiff failed to timely and substantively comply with the three-step prison grievance procedure. Plaintiff's April 9, 2018 ICR does not contain the information needed to comply with the first step of Ohio's prison grievance procedure. Under Ohio Admin. Code § 5120-9-31(J):

> Informal complaints must contain specific information: dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses. . . . In the event an inmate does not know the identity of the personnel involved, a "John/Jane Doe" complaint may be filed. However, the complaint shall be specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint.

---

SOCF's grievance system. Most notably, it lacks an ICR number that I would have assigned it, and written on it." (Doc. 24-2, Mahlman Decl., ¶ 7). Inspector Mahlman also avers:

> On November 9, *2019*, Inmate Lamb sent a kite to me stating "I want to know if you have an ICR on file I wrote in April 2018 pertaining to this assault. Also, is there a grievance filed to the chief inspector." I stamped the kite as "Received: Nov. 09, 2019."

(*Id.*, Ex. A) (emphasis added). She responded, "'[Y]ou filed 5 ICR's only since 1-23-19 and no grievances and nothing filed to the Chief Inspector.' I signed the response, which was dated November 10, 2019." (*Id.*).

Plaintiff has not attested to the information included in the November 29, 2018 ICR form. The content of the form therefore constitutes hearsay and will not be considered by the Court.

8

Ohio Admin. Code 5120-9-31(J). The only officer identified in the April 9, 2018 ICR is the "WCI shift supervisor" who, according to plaintiff, lied when he stated plaintiff refused to give a use of force statement. The ICR states plaintiff's hands were cuffed behind his back and he could not see after "officers" allegedly kicked him in the eye and maced him on the way to the infirmary. (Doc. 14-2, Ex. A). Plaintiff complained about not being able to give a statement regarding the alleged use of force and the shift supervisor's false representation that plaintiff refused to do so. He does not specifically identify any other officers allegedly involved in the use of force or provide physical descriptions of any John or Jan Doe officers so as to comply with the regulation. As a result, plaintiff failed to comply with the first step of the ICR filing requirements.

In addition, plaintiff alleges he filed another ICR "about the use of force in approx. 4/2018" explaining that "force was [used] against me for no reason. . . ." (Doc. 19-2, Pl. Aff., ¶¶ 2, 4). Plaintiff fails to allege any specific facts about the contents of this ICR, including "dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses." Ohio Admin. Code § 5120-9-31(J). Nor has plaintiff alleged any facts showing that this ICR was filed within 14 days of the alleged use of force such that the Court could conclude the ICR was timely filed. Absent factual support, plaintiff has failed to create a genuine issue of fact that he substantively and timely complied with the first step of the Ohio grievance procedure for ICRs.

Assuming, *arguendo*, that the April 9, 2018 ICR and undated ICR were timely filed and could be construed as adequately incorporating the necessary information, the Court must examine whether plaintiff "made affirmative efforts to comply with the administrative

9

procedures and whether those efforts to exhaust were sufficient under the circumstances." *Snyder*, 945 F.3d at 961. Plaintiff has failed to present evidence establishing a genuine issue of fact as to whether he timely comply with the second step of the grievance procedure.

The second step of the grievance procedure provides:

> If the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may file a notification of grievance with the inspector of institutional services. All inmate grievances must be filed by the inmate *no later than fourteen calendar days from the date of the informal complaint response or waiver of the informal complaint step*.

Ohio Rev. Code § 5120-9-31(J)(2) (emphasis added).

Plaintiff first contends that he did not receive a response to his April 9, 2018 ICR until nearly two years later in March 2020, and therefore he could not have timely filed a notification of grievance in compliance with the second step of the grievance procedure. However, plaintiff had the right to file a notification of grievance even if he did not receive a response to his ICR. The first step of the grievance process provides: "If the inmate has not received a written response from the staff member within seven calendar days, the inspector shall grant an additional four calendar days. . . . If a response is not provided by the end of the fourth day, *the informal complaint step is automatically waived and the inmate may proceed to step two*." Ohio Admin. Code 5120-9-31(J)(1) (emphasis added). Plaintiff was not required to wait for a response to his ICR before he was authorized to proceed with the second step of the grievance process. Therefore, even if plaintiff did not receive a response to his ICRs, the informal complaint step was waived after eleven days went by without a response.

Next, plaintiff argues he did not file a NOG because he did not have access to the JPay Securus System until March 2020, and "correctional staff repeatedly refused to provide forms to him and told him it would be futile to continue the process." (Doc. 19 at PAGEID 79; Doc. 19-

10

2, Pl. Aff. at ¶¶ 8-9). To be excused from complying with the mandatory PLRA exhaustion requirement and in order to proceed on his excessive use of force claim, plaintiff must show that the prison's grievance process was unavailable to him. *See Ross v. Blake*, _ U.S. _, 136 S. Ct. 1850, 1856-57 (2016). An administrative remedy is unavailable when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the grievance process is so incomprehensible that "no ordinary prisoner can discern or navigate it," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

In this case, plaintiff has presented no evidence that the special grievance process amounted to a "dead end" or was incomprehensible. Instead, he appears to allege that he was thwarted from pursuing his administrative remedies by multiple unnamed corrections officers when he requested grievance forms "after [he] was at LeCI for some time" and was told no forms were available. (Doc. 19-2, Pl. Aff. at ¶¶ 15-18). He also states he requested forms from Inspector Austin on unspecified dates, and Austin advised him it was too late and the prison did not have any forms. Plaintiff's vague assertions, without more, are insufficient to create a genuine issue of fact on whether plaintiff was thwarted from timely pursuing his administrative remedies.

Viewing the facts in the light most favorable to plaintiff, and accepting he did not receive notification of a response to his April 9, 2018 ICR until March 2020, the undisputed facts show that the first step of the prison grievance process was waived by April 20, 2018. Ohio Admin. Code § 5120-9-31(J)(2). Plaintiff therefore had until May 4, 2018 to file a NOG, which was

11

within 14 days of the waiver of the informal grievance step. *Id*. Because plaintiff had to file his NOG by May 4, 2018 to be timely, it follows that plaintiff did not timely pursue step two of the grievance procedure if he did not make any requests for NOG forms by that date. Plaintiff has not submitted evidence that shows there is a genuine issue on whether he timely requested NOG forms in an attempt to pursue the second step of the grievance procedure, but his efforts were thwarted.

Plaintiff makes only vague allegations in his affidavit regarding his alleged efforts to pursue filing an NOG. Plaintiff alleges in his affidavit that he began asking for NOG forms "after [he] was a[t] LeCI for some time. . . ." (Doc. 19-2, Pl. Aff. at ¶ 15). However, plaintiff's affidavit does not indicate when he asked for grievance forms or when he spoke with Inspector Austin. Plaintiff's vague assertions in his affidavit are insufficient to create an issue of fact as to whether he timely pursued filing an NOG but his efforts were thwarted. *See Chambers v. Hardy*, No. 19-5201, 2019 WL 8138590, at *4 (6th Cir. Oct. 30, 2019) (inmate's affidavit asserting he "attempted to exhaust" his administrative remedy and "filed a BP-11 and never heard any response on it" was vague and unsupported by any specific facts and insufficient to create an issue of fact); *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (inmate's "generalized statements are insufficient to create a genuine dispute of material fact as to whether the administrative process was available to him. . . .") (citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). *Cf. Barfield v. Erdos*, No. 1: 15-cv-696, 2017 WL 496086, at *4 (S.D. Ohio Feb. 6, 2017) (report and recommendation), *adopted*, 2017

WL 1078745 (S.D. Ohio Mar. 22, 2017) ("The vague, unsupported, conclusory allegations in plaintiff's unsworn filings are insufficient to call into question defendants' evidence of non-exhaustion and do not create a genuine issue of material fact on the exhaustion issue.");

Plaintiff has not produced any other evidence that indicates when he requested grievance forms from LeCI personnel. Absent such evidence, plaintiff has failed to present a genuine issue of fact showing he was thwarted "from taking advantage of [the] grievance process." *Ross*, 136 S. Ct. at 1860. *See Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 5773932, at *5 (S.D. Ohio Oct. 24, 2013) (granting summary judgment for defendants where inmate failed to present evidence "that he requested or attempted to request the step two forms from [the prison official] *within the proper timeframe*, or that he submitted or attempted to submit a notice of grievance to [the prison official] *within the proper timeframe*") (emphasis added). *See also Belser,* 2017 WL 5479595, at *2 (citing *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("[Plaintiff]'s bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint.")); *Cullins v. Page*, No. 1:12-cv-102, 2013 WL 214848, at *4 (S.D. Ohio Jan. 18, 2013) (report and recommendation), *adopted*, 2013 WL 1181610 (S.D. Ohio Mar. 21, 2013) (granting summary judgment where inmate "provided no specific information about who, when, where, or how he was prevented from pursuing the prison grievance procedure"); *Weatherspoon v. Dinsa*, No. 14-cv-12756, 2015 WL 5634448, at *5 (E.D. Mich. Sept. 25, 2015) ("Weatherspoon's assertions regarding his efforts are simply too vague to excuse his admitted failure to exhaust.") (citation omitted). As this Court has previously remarked:

13

> To allow a prisoner to avoid the exhaustion requirement by merely alleging he was inhibited in the process by prison officials would render the PLRA's exhaustion requirement meaningless and negate the purposes of exhaustion, i.e., "allowing a prison to address complaints . . . before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." [*Jones*, 549 U.S. at 219 (2007)]. Nothing would prevent a prisoner from avoiding the exhaustion requirement and summary judgment by simply making an unspecified allegation of interference when faced with evidence of non-exhaustion. Without specifying the who, what, when and how of a claim of interference, prison officials would never be able to come forward with proof they did not interfere with the prisoner's ability to exhaust because they would essentially be faced with proving a negative.

*Barfield*, 2017 WL 496086, at *5 n.1. Defendants' declarations establish that plaintiff failed to comply with the second step of the prison grievance process, and plaintiff's vague and generalized assertions in his affidavit do not permit a finding that his efforts to timely complete the second step of the grievance process were thwarted.

Next, plaintiff argues that he did not have access to the grievance policy while in restrictive housing and should not be held to have knowledge of the grievance procedures during that period of time. (Doc. 19 at PAGEID 81). Plaintiff acknowledges that he received a copy of the ODRC Inmate Grievance Procedures when he arrived at WCI in May of 2017, but he contends he did not have access to a copy of the policy while housed in segregation and had no guidance on how to proceed when he did not receive a timely response to his complaint and was denied grievance/complaint forms. (Doc. 19 at PAGEID 5). This does not create a genuine issue of fact on whether plaintiff's failure to exhaust should be excused. "The Sixth Circuit has rejected the argument that the failure of a facility to explain the grievance policy or the PLRA excused the inmate's failure to exhaust." *Willis v. Mohr*, 2013 WL 5773932, at *8 (citing *Napier v. Laurel Cnty.*, 636 F.3d 218, 221-22 n. 2 (6th Cir. 2011) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.").

14

Finally, even accepting plaintiff's assertion that he attempted to exhaust his administrative remedies by sending an appeal letter to the ODRC Chief Inspector in November or December 2018, this does not excuse plaintiff's failure to comply with each step of the grievance process. To exhaust the prison grievance procedure, plaintiff must take "advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process. . . ." *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (internal quotation marks omitted). This Court does not have the discretion to excuse an inmate's failure to exhaust, even in the face of special circumstances. *See Ross*, 136 S. Ct. at 1856-57. Because plaintiff has not taken advantage of "each step" of the prison grievance procedure under Ohio law, he has not exhausted his administrative remedies.

Thus, defendants have carried their burden to show that plaintiff did not exhaust his administrative remedies for his claim based on defendants' alleged use of force on April 6, 2018. Defendants are therefore entitled to summary judgment based on plaintiff's failure to exhaust his administrative remedies.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendants' motion for summary judgment (Doc. 14) be **GRANTED** for failure to exhaust administrative remedies under 42 U.S.C. § 1997e. Plaintiff's complaint should be **DISMISSED** without prejudice.

Date: 2/23/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| TOBY LAMB, II,<br>   Plaintiff, | Case No. 1:20-cv-00265<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| CORRECTIONAL OFFICER,<br>JUSTIN REECE, et al.,<br>   Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).